UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Case No. 10-cv-01521-WYD-KMT

JUSTIN COLE,

      Plaintiff,

v.

JOHN MCHUGH, Secretary of the Army,

      Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

      THIS MATTER is before the Court on Defendant's "Motion for Summary Judgment and Supporting Brief, and Alternatively, Partial Motion to Dismiss" filed June 13, 2011.  A response was filed on July 6, 2011, and a reply was filed on August 5, 2011.  For the reasons discussed below, Defendant's motion is granted in part and denied in part.

II.    <u>FACTUAL BACKGROUND</u>

      Plaintiff has filed a discrimination claim alleging that the Army failed to hire him for a position based on his disability.  He also asserts a claim for retaliation based on the threat of negative job references when he informed Col. Nicholas Piantanida, the final decision maker, of his belief that the failure to hire was discriminatory and that he would be seeking legal counsel.  Plaintiff's claims are asserted under the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*

Plaintiff is a former Army officer who received an honorable medical discharge in mid-April, 2009 due to a diagnosis of post traumatic stress disorder ["PTSD"] arising out of combat operations in Iraq.[1]  From 2004 to mid 2006, Plaintiff was an active duty Captain in the Army stationed at Walter Reed Army Medical Center ["Walter Reed"] in Maryland.  Plaintiff worked as a clinical social worker.

While stationed at Walter Reed, Plaintiff was placed in the Impaired Provider Program and received treatment for alcohol abuse.  The Impaired Provider Program is a military program designed to help medical providers with substance abuse and mental health issues, and maintain or regain the ability to treat patients safely.

In May 2006, while allegedly suffering from symptoms of PTSD, Plaintiff was involved in an altercation at a bar in Maryland and arrested for assault, disorderly conduct and resisting arrest.  Plaintiff did not report this arrest to his military superiors.  Plaintiff asserts that the criminal charges were dismissed and ultimately expunged.[2]

In August 2006, Plaintiff was reassigned to the Evans Army Community Hospital ["EACH"] as the Chief of social work in the Department of Behavioral Health.  At that time, the Deputy Commander in charge of all clinical services departments at EACH was Col. James Terrio.[3]

---

[1]  I cite the record only when the facts are disputed.

[2]  While I did not see any evidence to support the last sentence of this paragraph, it is not a material fact.

[3]  The parties dispute whether Col. Terrio was Plaintiff's second or third level supervisor; however, this is not a material fact.

Several months after Plaintiff was reassigned to EACH, Plaintiff's military Company Commander was informed of Plaintiff's arrest in Maryland by military personnel, and questioned Plaintiff about it.  Plaintiff falsely told his Company Commander that he had not been arrested.  Plaintiff claimed that he had lost a non-photo identification card and that the actual person arrested must have used the identification card to fool the police.  Plaintiff told the same false story to Col. Terrio and Col. Knorr and his company commander, Capt. Kristine Gillette.

On February 1, 2007, Plaintiff received a written reprimand from Major General Robert Mixon, Jr., the Commanding Officer at Ft. Carson, based on Plaintiff's conduct leading to his arrest.  The written reprimand indicated that General Mixon intended to place it in Plaintiff's military personnel file, but that Plaintiff could submit further information if he felt that the filing of the reprimand in his file was unwarranted.

On February 27, 2007, Plaintiff submitted a letter for General Mixon's consideration in which he falsely continued to claim that someone else had been arrested and had used his non-photo Oregon drivers license to identify themself as Plaintiff.  Plaintiff went on to falsely claim that when he appeared in court, the charges were dropped when the judge confirmed that he was not the person arrested.

On May 24, 2007, General Mixon imposed Article 15 discipline on Plaintiff for lying about his arrest to numerous superior officers and for conduct unbecoming an officer.  The discipline imposed was that Plaintiff forfeited $2416 pay per month for two months.  Plaintiff's appeal was denied on June 20, 2007.  Article 15 discipline is a

nonjudicial form of punishment, short of court-martial, which is available for imposition by a military commander under the Uniform Code of Military Justice.

In May 2007, Col. Terrio presented Plaintiff with his mug shot that had been obtained from the Montgomery County Sheriffs's Department.  Plaintiff then admitted that he had been lying about the arrest.

Following his punishment, Plaintiff remained an active duty officer and continued to work at Fort Carson, albeit in a non-clinical capacity due to his PTSD and his involvement in the impaired provider program.

On August 27, 2007, General Mixon initiated procedures to discharge Plaintiff from the Army via a Show Cause Board.  Under this procedure, a three person board determines if Plaintiff should be discharged from the military.

On October 25, 2007, the Chair of Volunteers of the American Red Cross at EACH, Lona Mayfield, filed a written complaint against Plaintiff for inappropriate behavior and sexual harassment.  Ms. Mayfield alleged that Plaintiff ridiculed, mocked, harassed and intimidated her, and used foul language in her presence.

In January 2008, Col. Kelly Wolgast, the overall commander at EACH, and Col. Terrio referred Plaintiff to the Alcohol and Substance Abuse Program ["ASAP"].  Plaintiff was placed in the Impaired Provider Program due to suspected alcohol abuse. Plaintiff's PTSD was co-morbid with alcohol abuse, which caused self medication with alcohol, and resulted in Plaintiff's referral to the ASAP.

On July 21, 2008, Lt. Col. Nicholas Piantanida assumed the position as Deputy Commander at EACH, replacing Col. Terrio.  He has since received a promotion and

will hereinafter be referred to as Col. Piantanida.  From July, 2008 through his

discharge, Col. Piantanida was actively involved in the oversight of Plaintiff's treatment

for PTSD and the decisions about Plaintiff's privileges to engage in the clinical practice

of social work.

In July 2008, Col. Terrio briefed Col. Piantanida on employee issues at EACH,

including Plaintiff's Article 15, the Show Cause Board, and informed him that Plaintiff

had been placed in the Impaired Provider Program and was receiving mental health

counseling for alcohol abuse and PTSD.  Col. Piantanida believed that Plaintiff's

attending ASAP was connected to the issue at the bar that resulted in the arrest of

Plaintiff.

In August 2008, Plaintiff's clinical privileges to treat patients [his "credentials"]

were placed in abeyance because of his PTSD.  This occurred within 30 days of Col.

Piantanida's commencement of work as the Deputy Commander.  Plaintiff's credentials

were summarily suspended for an indefinite period because he was receiving treatment

for PTSD.  From approximately June 2008 through March 2009, Plaintiff received

mental health counseling at the Air Force Academy.  Plaintiff was primarily treated by

Major Christine Baltzer, the Medical Director of the Mental Health Clinic.

After his credentials were suspended, Plaintiff was assigned to perform

administrative duties for the Department of Behavioral Health at EACH.  At the time,

Col. George Brandt was the Director of the Department of Behavioral Health and

Plaintiff's military Company Commander was Capt. Gillette.

Capt. Gillette expressed to Col. Piantanida that she was having a hard time holding Plaintiff accountable, and Col. Piantanida testified that Capt. Gillette was frustrated with Plaintiff.  (Mot. for Summ. J., Ex. A-2, Piantanida Depo. 60:10-60:17.) Col. Piantanida could not remember any specific examples of the problems Capt. Gillette was having with Plaintiff (*id.*, 60:18-60:21), and Capt. Gillette never took any disciplinary or corrective action against Plaintiff for his alleged lack of accountability. Also, Col. Brandt told Col. Piantanida that there were concerns with communication problems Plaintiff had with his patients and peers as a result of his PTSD.

During the time Plaintiff was performing administrative duties in Col. Brandt's department, a female employee made a sexual harassment complaint to Col. Brandt against Plaintiff.  The female employee claimed that she had observed Plaintiff showing a picture on his cell phone supposedly depicting female breast augmentation surgery. The female employee did not want to make a formal complaint.  Plaintiff admits that the complaint was made against him but denies the allegations made by the female employee.  That is not, however, a material issue.

Col. Brandt did not investigate the female employee's accusation of sexual harassment against Plaintiff, did not ask Plaintiff if he had shown a picture of female breasts on a cell phone, and did not care if the allegations against Plaintiff were true. Col. Brandt was concerned that a complaint had been made, and thought Plaintiff should have responded differently when confronted about this by saying he was sorry. (Pl.'s Resp., Ex. 5 at 227-229).  He also thought Plaintiff should have been concerned with the way the female employee perceived him, even if he had not done anything

wrong.  (*Id.*)  Col. Brandt informed Col. Piantanida about the female's complaint and said he needed Plaintiff out of his department.  (Mot. for Summ. J., Ex. A-2, Piantanida Depo. 50:6-50:21.)  He also told Col. Piantanida that Plaintiff was not performing well.  (*Id.* 49:13-18.)  Col. Piantanida stated that Col. Brandt could not tolerate having Plaintiff in the department and basically fired him.  Col. Brandt did not report the unnamed female employee's accusation of sexual harassment against Plaintiff to Col. Piantanida or anyone else until April, 2009, when the credential committee was meeting to determine if Plaintiff's credentials would be reinstated.[4]

After receiving a letter from Major Baltzer in March 2009 indicating that Plaintiff's PTSD was in remission, Col. Piantanida provided the letter to the Impaired Provider Committee and a decision was made to convene the Credentials Committee to review the suspension of Plaintiff's credentials.  Col. Piantanida, the Chair of the Credentials Committee, advocated that Plaintiff's credentials be reinstated.  On April 14, 2009, the Credentials Committee reinstated Plaintiff's credentials.

After he received Dr. Baltzer's letter clearing Plaintiff to return to practice, it was Col. Piantanida's priority to get Plaintiff back to work performing clinical patient care.  He testified that the professional relationship between Plaintiff and Col. Brandt was strained, and so he looked at assigning Plaintiff to the Soldier Readiness Center in the

---

[4]  After Col. Brandt talked to Plaintiff about the sexual harassment allegation in late September or early October, 2008, when the department was preparing for the Joint Commission inspection, Plaintiff did not come back to work under Col. Brandt's command.  Col. Brandt did not testify that he fired Plaintiff or asked to have Plaintiff reassigned to a different duty location.  However, Col. Brandt regularly held meetings of all the chiefs of the various sections of the Department of Behavioral Health.  At one such meeting prior to April 15, 2009, Col. Brandt stated that "Justin Cole will not work here again", or words to that effect.

Department of Health. (Pl.'s Mot., Ex. 3 at 37-38.) The Soldier Readiness Center is a different department where Col. Piantanida said there was plenty of need for social workers, and he thought that this would be a better fit for Plaintiff. (*Id.*) However, Plaintiff left the Army shortly thereafter.

Specifically, Plaintiff was granted a medical discharge from the Army effective April 15, 2009, based on a diagnosis of Anxiety Disorder, Not Otherwise Specified. If Plaintiff's credentials had not been reinstated prior to his medical discharge, Army Regulation 40:68 would have required that the summary suspension of his credentials become permanent and subject to review by the Surgeon General of the Army. That suspension would have been reported to the National Practitioner Data Bank and state regulatory agencies, which would have made it difficult for Plaintiff to find employment as a social worker.

On April 7, 2009, a Vacancy Announcement was issued for a civilian Social Worker position in the Department of Deployment Health at EACH. Plaintiff applied for the position on April 24, 2009, within two weeks of his medical discharge. Plaintiff asserts that this position was similar to the one he held prior to his discharge, and was in the Soldier Readiness Center. It is undisputed that Plaintiff disclosed his PTSD during the interview process. A three person hiring panel recommended that Plaintiff be selected for the position.

Alden Prowell was the medical operations director of the Fort Carson Soldier Readiness Center for the Department of Deployment Health. He testified that Plaintiff had excellent work ethics. He worked well with the soldiers, and everyone liked him.

Mr. Prowell felt that Plaintiff was a good, viable candidate for the vacant social worker position.  He submitted the staff action summary package for Plaintiff's selection and hiring for the position, and notified Plaintiff of this.   Col. Piantanida testified that Mr. Powell handed him the selection package in a morning meeting and said, "Here Col. P, this is our selection for the vacant social worker position, it is Justin Cole."

On June 9, 2009, Col. Piantanida, the first level reviewing authority, rejected the panel's selection recommendation.  Consequently, Plaintiff was not offered the job.  The package for Plaintiff was disapproved by Col. Piantanida, and it had a sticky note on it which read, "This is a non-starter."  Mr. Prowell did not have any conversation with Col. Piantanida about his disapproval of the proposed selection of Plaintiff.  This was the first selection package in six years that Mr. Prowell had submitted which was disapproved after being approved by the Resources Manager and Human Resources Divisions.  Mr. Prowell never found out from Col. Piantanida the reason he disapproved Plaintiff's selection, and never had a conversation with him about the decision.  After the Civilian Personnel Office at Fort Carson learned that Plaintiff's proposed selection had not been approved, the position was advertised as an additional vacancy.

Col. Piantanida asserts that he rejected Plaintiff for the social worker position because he was aware of negative information about the performance and conduct of Plaintiff when he was on active duty, which Col Piantanida felt showed a lack of integrity and professionalism.  More specifically, Defendant asserts that Col. Piantanida did not select Plaintiff because he was aware that Plaintiff:

a. Was arrested for assault/disorderly conduct and resisting arrest after a bar altercation in Maryland in 2006;

b. Had not reported the arrest to military authorities;

c. Verbally lied to several military superiors at EACH when asked about the arrest;

d. Repeated the false story in a written explanation to General Mixon;

e. Was punished by General Mixon under Article 15 for conduct unbecoming an officer and lying to superiors;

f. Was the subject of a "Show Cause" board;

g. Was the subject of harassment allegations by the Chair of Volunteers for the American Red Cross at EACH;

h. While performing administrative duties, was not accountable to his superiors;

j. Was accused of sexual harassment by another female who indicated she was offended that Plaintiff was showing and discussing a cell phone picture which he described as depicting a woman's breast augmentation.

As to the sexual harassment complaint made against Plaintiff by the Red Cross volunteer, Col. Piantanida testified on October 20, 2009, that he was not aware of this at the time he disapproved Plaintiff's proposed selection.  (Ex. 1, Piantanida Fact Finding Conference Tr. at 133:16-134:14.)  Despite his earlier testimony to the contrary, at his deposition on May 12, 2011, Col. Piantanida repeatedly testified that Col. Brandt informed him of the complaint made by the Red Cross volunteer, and that Col. Brandt

counseled or corrected Plaintiff's behavior with regard to the Red Cross volunteer's complaint. (Ex. 3, Piantanida Dep. Tr. at 51:2-5; 51:10-15; 52:18-53:10.) Thus, there is a genuine issue of material fact as to whether Col. Piantanida terminated Plaintiff based upon reason (g) above.

Plaintiff also asserts that Col. Piantanida was only aware of the allegations contained in paragraphs (a) through (f) above. As stated previously, there is a material dispute as to reason (g). As to reason (h), while Plaintiff disputes this was a reason that he was terminated, Col. Piantanida did testify that Captain Gillette expressed to him that she was frustrated with Plaintiff's lack of accountability. Thus, Defendant has stated support for this reason that Plaintiff has not refuted, and I find no genuine material fact as to same. Finally, as to reason (j)[5], while Plaintiff disputes that he engaged in the alleged sexual harassment, there is no dispute that Col. Piantanida had knowledge of this incident when he chose to terminate Plaintiff. Again, I find no genuine issue of material fact on this issue.

Prior to Col. Piantanida making the decision to reject the proposed selection of Plaintiff, he asked Col. Brandt about hiring Plaintiff. Col. Brandt was opposed to it.

Plaintiff met with Col. Piantanida on June 2009 to discuss his non-selection. Plaintiff confronted Col. Piantanida about his refusal to approve Plaintiff's selection. Plaintiff told Col. Piantanida he felt he was being discriminated against and that he would seek legal counsel. Col. Piantanida told Plaintiff that if he pursued the matter, he would not be able to be as supportive of Plaintiff's efforts to obtain employment.

---

[5] Defendant omitted a reason (i).

Defendant asserts that Col. Piantanida intended to convey that military lawyers would become involved and would limit the information he could provide to prospective employers.

On June 25, 2009, Plaintiff contacted an Equal Employment Opportunity counselor.  On July 9, 2009, Plaintiff, who was represented by counsel, filed a formal complaint/charge of discrimination.  The formal complaint alleged that Plaintiff was discriminated against on the basis of a disability (PTSD) when he was not hired for the civilian social worker position at EACH.  The retaliation box was not checked on the formal complaint.  The only place the word "retaliation" is stated in that complaint is in paragraph 7 of the attached factual memorandum, which states that Col. Piantanida retaliated against Plaintiff when "He stated that if I pursued and sought legal counsel, he would not be able to be as supportive."

The EEO issues accepted for investigation by the Army were: (1) was Plaintiff discriminated against based on his disability (PTSD) when he was not selected for the social work position at EACH; and (2) was Plaintiff discriminated against based on his disability (PTSD) when Col. Piantanida told him he would not be as supportive of future employment opportunities if the complainant pursued legal counsel regarding the non-selection.  A retaliation claim was added by Plaintiff at the Fact Finding Conference, but that was only as to Col. Piantanida's statement to Plaintiff that he would not be as supportive of future employment opportunities if Plaintiff pursued legal counsel.

Plaintiff was hired as a social worker by the Department of Veterans Affairs ["VA"].  Plaintiff's employment with the VA was effective on November 22, 2009.

Paul Damm received an Article 15 nonjudicial punishment while he was an active duty member of the Army.  He was subsequently hired as a civilian social worker at Fort Carson.  There is no evidence, however, as to whether or how Mr. Damm was similarly situated as to Plaintiff.

III.    ANALYSIS

    A.    Motion for Summary Judgment

        1.    Summary Judgment Standard

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit."  *E.E.O.C. v. Horizon/ CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented.  *Id.*

The burden of showing that no genuine issue of material fact exists is borne by the moving party.  *Horizon/ CMS Healthcare Corp.*, 220 F.3d at 1190.  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).  When applying the summary judgment standard, the court must "'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing

summary judgment.'" *Id.* (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 8s92 (10th Cir. 1991).

2.      The Summary Judgment Motion

a.      Disability Discrimination

The burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to disparate treatment disability discrimination claims. *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011). In order to prove a claim of disability discrimination, "plaintiff must demonstrate that he '(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability.'" *Id.* (quoting *Justice v. Crown Cork & Seal Co., Inc.,* 527 F.3d 1080, 1086 (10th Cir.2008)). "In order to demonstrate 'discrimination,' a plaintiff generally must show that he has suffered an 'adverse employment action because of the disability.'" *Id.* (quotation omitted).

In this case, Defendant does not dispute that Plaintiff is a disabled person as defined by the ADA and that he was qualified for the job. Defendant disputes, however, that Plaintiff was discriminated against, *i.e.* not selected for a position, because he was disabled or regarded as being disabled. As Plaintiff notes, the burden of proof of this element is not onerous; Plaintiff must merely present evidence that, if the trier of fact

finds it credible, and the employer remains silent, []he would be entitled to judgment as a matter of law. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1322-23 (10th Cir. 1997).

I find that Plaintiff has established this prong of the discrimination case.  It is undisputed that Plaintiff was qualified for the position, and that during the application process he disclosed the existence of his PTSD.  Despite Plaintiff's qualifications, he was not hired for the position, the position remained vacant, and was advertised as such by Fort Carson's Civilian Personnel Office.  By showing that the position for which he was qualified remained vacant after the rejection of his application, Plaintiff has established an inference that the failure to hire was discriminatory.  *See Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358 n. 44 (1977) (Although the McDonnell Douglas formula does not require direct proof of discrimination, it does demand that the alleged discriminatee demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.  Elimination of these reasons for the refusal to hire is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one.).

Since Plaintiff has established a prima facie case, "'the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision.'" *Weld County*, 594 F.3d at 1217 (quotation omitted).  "Should the defendant articulate a nondiscriminatory reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether defendant's reason for the discharge is pretextual." *Id.*

I find that Defendant has asserted legitimate, nondiscriminatory reasons for not hiring Plaintiff.  According to Defendant, Col. Piantanida rejected Plaintiff for the position because he was aware of Plaintiff's misconduct when he was on active duty, which conduct he believed demonstrated a lack of integrity and professionalism.  He was aware that Plaintiff had lied about his arrest in Maryland to numerous superior officers, including General Mixon, and that this lying led to Article 15 discipline and the initiation of a Show Cause Board.  Col. Piantanida was also aware of at least one sexual harassment complaint against Plaintiff.

Thus, I turn to whether Plaintiff has demonstrated pretext.  To establish pretext, a plaintiff must present evidence that the employer's reason was so inconsistent, implausible, incoherent, or contradictory, that it is unworthy of belief.  *Stover v. Martinez,* 382 F.3d 1064, 1071 (10th Cir. 2004).

I find that Plaintiff has presented evidence of pretext.  Plaintiff asserts that upon the reinstatement of his clinical privileges in April 2009, the Army was faced with an active duty member who needed to be assigned to a duty station performing clinical work.  Col. Piantanida discussed assigning Plaintiff to the Soldier Readiness Center ["SRC"] to work as a social worker, which he believed would be a better fit for Plaintiff. At that time, Col. Piantanida already knew of the misconduct which Defendant claims supported the decision to later not hire Plaintiff.

Plaintiff argues that it is incomprehensible that on or about April 14, 2009, Plaintiff was qualified for the position in the SRC, but a few weeks later, his history of serious misconduct demonstrated such a lack of professionalism that he could not be

hired to fill the very same position in the SRC.  No additional misconduct occurred

during that time, and all of the alleged misconduct was known to Defendant as of April

14, 2009.  I agree with Plaintiff that this presents a genuine issue of material fact as to

pretext.  It shows a weakness, implausibility, inconsistency, incoherence, or a

contradiction in the employer's proffered legitimate reasons for its action such "that a

reasonable fact finder could rationally find them unworthy of credence and hence infer

that the employer did not act for the asserted non-discriminatory reasons." *Jencks v.

Modern Woodmen of America*, 479 F.3d 1261, 1267 (10th Cir. 2007).  In so finding, I

note that "all doubts concerning pretext must be resolved in plaintiff's favor." *Id.*[6]

As additional support for my finding of pretext, Defendant relies on the two

allegations of sexual harassment against Plaintiff as support for the failure to hire

Plaintiff.  However, Col. Piantanida admitted on October 20, 2009, that he was not

aware of one of these complaints (the complaint made against Plaintiff by the Red

Cross volunteer) at the time he disapproved Plaintiff's selection.  This is an

inconsistency that also supports a finding of pretext.  Similarly, Col. Piantanida's

admissions that he knew Plaintiff's PTSD played a role in the incident in Maryland and

also caused problems with Plaintiff's ability to communicate with patients and peers

---

[6]   While Defendant argues that the discussion about assigning Plaintiff to the Soldier Readiness
Center was merely academic because it was known that Plaintiff was being medically discharged from the
Army on April 15, 2009, the day after his credentials were reinstated, it has not cited evidence to support
that argument.  Col. Piantanida did not testify to that effect. Thus, I reject that argument.  Defendant also
argues that if Plaintiff had remained on active duty, Col. Piantanida would have needed to assign him
somewhere, and the fact that he considered assigning him to the SRC in an active duty position does not
establish that his decision not to hire Plaintiff as a civilian was a pretext.  I find that there are genuine
issues of material fact as to ths issue, and this issue must be resolved by the jury.

raise questions about whether Defendant's reliance on the earlier misconduct is actually addressed to Plaintiff's disability.[7]

In light of these facts, Defendant's explanation for the refusal to hire Plaintiff may be deemed to be unworthy of belief by a reasonable fact finder. Accordingly, I find that summary judgment should be denied as to the disability discrimination claim.

      b.    <u>Retaliation at June 2009 Meeting</u>

Plaintiff claims retaliation in connection with his meeting with Col. Piantanida in June 2009 to discuss his non-selection, wherein Plaintiff confronted Col. Piantanida about his refusal to approve Plaintiff's selection and told Col. Piantanida he felt he was being discriminated against and that he would seek legal counsel. Plaintiff claims that Col. Piantanida retaliated against him by telling Plaintiff that if he pursued the matter, he would not be able to be as supportive of Plaintiff's efforts to obtain employment.

To establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action. *Hennagir v. Utah Dept. Of Corrections*, 587 F.3d 1255, 1265 (10th Cir. 2009). If a prima facie case is established, the defendant "'has the burden of coming forth with a legitimate, nondiscriminatory reason for adverse action.'" *Id.* (quoting *Butler v. City of*

---

[7] I find the case of *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177 (10th Cir. 2006), cited by Defendant in support of its argument, to be inapposite. In that case, the Tenth Circuit held that where "the employee was hired and fired by the same person within a relatively short time span,' there is a strong inference that the employer's stated reason for acting against the employee is not pretextual." *Id.* at 1183 (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)). This case does not present a situation where Plaintiff was hired and fired within a relatively short time span. The fact that Col. Piantanida chose to recommend that Plaintiff received his credentials back is not the same as a decision to hire him.

*Prairie Village, Kan.,* 172 F.3d 736, 752 (10th Cir.1999)).  If the defendant does  so, "the burden shifts back to the plaintiff to show that 'the reason given by the employer is mere pretext for the real, discriminatory reason for the adverse action.'"  *Id.* (quoting *id.*).

In the case at hand, Plaintiff initially contacted an EEO counselor on June 25, 2009, regarding his nonselection for the social worker position at EACH.  Thus, it is undisputed that he engaged in protected activity on that date.  To the extent Plaintiff is claiming that he engaged in protected activity on or about June 19, 2009, when he told Col. Piantanida that he intended to contact a lawyer regarding his non-selection, Defendant disputes that just making this statement was engaging in protected activity. However, Defendant acknowledges and I find that there is a genuine dispute of material fact as to whether Plaintiff also stated that his non-selection was discrimination because of his PTSD, which would be sufficient to be considered protected activity.  Thus, I turn to whether the alleged response by Col. Piantanida was a materially adverse action.

A materially adverse action is one that well might dissuade a reasonable worker from making a discrimination complaint.  *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006).  The Tenth Circuit takes a case-by-case approach to the materially adverse action element, examining the unique factors at hand.  *McGowan v. City of Eufala*, 472 F.3d 736, 741-42 (10th Cir. 2006).  Not everything that makes an employee unhappy is a materially adverse action.  For example, petty slights, minor annoyances, and simple lack of good manners will not deter a reasonable worker from making or supporting a charge of discrimination.  *Burlington N.,* 548 U.S. at 68.

Defendant argues that the alleged statement by Col. Piantanida did not deter Plaintiff from engaging in protected activity.  Plaintiff contacted an EEO counselor a few days later and filed a formal EEO complaint on July 9, 2009.  Defendant cites *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008), holding that "the fact that an employee continues to be undeterred in his or her pursuit of a remedy, as here was the case, may shed light as to whether the actions are sufficiently material and adverse to be actionable".  I agree that the alleged statement at issue did not actually deter Plaintiff from engaging in protected activity.  However, this does not definitively resolve the issue.

Defendant also argues, however, that the alleged statement by Col. Piantanida was no more than a petty slight that was too insignificant to be considered a material adverse action.  I agree.  Plaintiff cites *Hillig v. Rumsfeld*, 381 F.3d 1028 (10th Cir. 2004) and *Berry v. Stevinson Chevrolet*, 74 F.3d 980 (10th Cir. 1996) for their holdings that an employer who actually provides negative information that adversely affects future employment prospects can be an adverse action.  However, as Defendant notes in its reply, Plaintiff produces no evidence that Col. Piantanida and/or Col. Brandt actually provided any negative information about him to any potential employer.  In fact, the undisputed evidence establishes that Plaintiff was hired by the VA in November 2009, which is circumstantial evidence that a negative reference was not provided.  Thus, *Hillig* and *Stevinson* are not applicable.  Here, at best, Plaintiff has shown an unfulfilled threat that resulted in no material harm, which I find is not an adverse

employment action.  *See Tapia v. City of Albuquerque*, 170 Fed. Appx. 529, 534-35 (10th Cir. 2006).

Defendant also argues that Col. Piantanida was only making the legitimate point that if lawyers got involved, the Army lawyers would no doubt limit what Col. Piantanida could say.  Thus, Defendant argues that Plaintiff lacks evidence that establishes this reason for the comment was a pretext.  Again, I agree.  Plaintiff did not establish or even argue the issue of pretext.

Based on the foregoing, I find that summary judgment should be granted as to Plaintiff's retaliation claim based on Col. Piantanida's response at the meeting with Plaintiff in June 2009 regarding Plaintiff's non-selection.

2.       Motion to Dismiss and Motion for Judgment on the Pleadings

Defendant also moves for dismissal or judgment on the pleadings on Plaintiff's claim that Col. Piantanida and/or Col. Brandt retaliated against him by *actually* providing negative references to other potential employers.  Defendant argues that the Court lacks jurisdiction because Plaintiff failed to exhaust administrative remedies as to such a claim.  I agree with Defendant that the Tenth Circuit has repeatedly and unequivocally held that exhaustion of administrative remedies is a jurisdictional prerequisite for asserting an employment discrimination claim in this Court.  *Shikles v. Sprint, United Management Co.,* 426 F.3d 1304, 1317-18 (10th Cir. 2005); *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996).  Each discrete adverse action constitutes its own unlawful employment practice for which administrative remedies must be exhausted. *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).

To meet this jurisdictional requirement, a plaintiff's claim in court must have been stated in an EEO complaint and resolved at the administrative level of the case. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1166 (10th Cir. 2007). Plaintiff's argument that exhaustion is not jurisdictional appears to confuse failing to *timely* exhaust administrative remedies, which is a statute of limitations defense, with failing to exhaust a claim at all, which is jurisdictional.

Here, there is no evidence that Plaintiff exhausted administrative remedies on any discrete negative reference retaliation claims. Thus, dismissal of this claim is appropriate. The only mention of retaliation in Plaintiff's EEO complaint discusses Col. Piantanida's alleged comment that he would not be able to support Plaintiff in the future, not that he provided any negative references. Also, the only issues accepted for investigation were the non-selection for the EACH position and Col. Piantanida's alleged statement that he would not be as supportive of Plaintiff in the future. Although a retaliation claim was added by Plaintiff at the Fact Finding Conference, that was only on the claim regarding Col. Piantanida's alleged statement to Plaintiff.

I also reject Plaintiff's argument that dismissal is not appropriate because actual negative references are reasonably related to the retaliation claim regarding Col. Piantanida's statement. As Defendant notes in its reply, this argument fails to recognize that the "reasonably related" theory is no longer good law; the law now requires separate exhaustion for each discrete adverse action. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-16 (2002). Plaintiff is also incorrect in asserting that a failure to exhaust argument cannot be resolved via a motion to dismiss pursuant

to Fed. R. Civ. P. 12(b)(1), but must be decided pursuant to a motion for summary judgment.  A motion to dismiss for lack of jurisdiction is the correct way to raise a failure to exhaust argument.  *Shikles,* 426 F.3d at 1317-18.[8]

Based on the foregoing, I find that the portion of the motion that seeks dismissal under Rule 12(b)(1) is granted as to Plaintiff's claim that Col. Piantanida and/or Col. Brandt retaliated against him by *actually* providing negative references to other potential employers.[9]

IV.   CONCLUSION

In conclusion, for the reasons discussed in this Order, it is

ORDERED that "Defendant's "Motion for Summary Judgment and Supporting Brief, and Alternatively, Partial Motion to Dismiss" filed June 13, 2011 (ECF No. 21) is **GRANTED IN PART AND DENIED IN PART**.  Specifically, it is

ORDERED that the portion of Defendant's motion that seeks summary judgment is **DENIED** as to the disability discrimination claim and **GRANTED** as to the retaliation claim that alleges that Col. Piantanida retaliated against Plaintiff in a June 2009 meeting by stating that if Plaintiff pursued the matter (seeking legal counsel), he would not be able to be as supportive of Plaintiff's efforts to obtain employment.  It is

---

[8]   Plaintiff also argued in his response that Defendant admitted that Plaintiff exhausted administrative remedies in a response to Request for Admission number 2.  However, the Response only admitted that Plaintiff exhausted administrative remedies on the claims identified in the Final Agency decision dated March 25, 2010; it denied to the extent any other claims are being asserted in the judicial complaint.  As previously discussed, Plaintiff never filed, and the Army never accepted, a claim that Col. Piantanida and/or Col. Brandt actually provided a negative reference in retaliation for protected activity.  Moreover, a party cannot waive a lack of jurisdiction.

[9]   Since I am dismissing this claim under Rule 12(b)(1), I need not address Defendant's alternative request to grant judgment as a matter of law on this claim.

FURTHER ORDERED that the portion of Defendant's motion that seeks

dismissal under Fed. R. Civ. P. 12(b)(1) is **GRANTED** as to the claim that

Col. Piantanida and/or Col. Brandt retaliated against Plaintiff by actually providing

negative references to other potential employers.

Dated:  January 13, 2012

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge